UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NORTHFIELD INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>CIVIC CENTER HOTEL, LLC, et al.,<br><br>Defendants. | Case No. 3:16-cv-06056-WHO<br><br>**ORDER GRANTING MOTION TO STAY**<br><br>Re: Dkt. No. 26 |

## INTRODUCTION

Northfield Insurance Company ("Northfield") brought this action for declaratory relief against defendants Civic Center Hotel, LLC; Balvantsinh "Bill" Thakor; and U.A. Local 38 Pension Trust Fund (collectively, "Civic Center Defendants") concerning its obligation to provide insurance coverage for certain types of damages in two underlying state court actions in which tenants of the Civic Center Hotel allege inhabitable conditions. The underlying actions are ongoing and Northfield does not deny its duty to defend. However, it seeks a declaration that certain damages are not covered under Northfield Insurance Policies (2012/2013 Policy, 2013/2014 Renewal, and 2014/2015 Renewal), and now moves for summary judgment that attorneys' fees, restitution, and penalties are not covered under the policies. Concurrently, defendant U.A. Local 38 moves to dismiss this action because it is not ripe, or to stay pending resolution of the underlying actions. Additionally, defendants Civic Center Hotel and Bill Thakor move for summary judgment on plaintiffs' fifth cause of action that the "habitability of premises" exclusion is unenforceable as a matter of law.

Northfield's justification for proceeding now is that a resolution on coverage for the three categories of damages will help facilitate settlement negotiations. That is not a persuasive reason

for the Court to exercise jurisdiction. While this action satisfies constitutional and statutory jurisdictional prerequisites, I will STAY it pending resolution of the underlying actions in Superior Court. I do not reach the merits of the pending motions for summary judgment.

## BACKGROUND

### I. FACTUAL BACKGROUND

#### A. The Northfield Insurance Policies

Northfield Insurance Company ("Northfield) is a surplus lines insurer that uses Coastal Brokers Insurance Services, Inc. ("Coastal Brokers") as its California agent. Northfield's Opp'n to Defs.' Mot. for P. Summ. J. at 1 (Dkt. No. 61). Northfield provided the defendants with insurance from 2012 to 2015. Compl. ¶¶ 10–13 (Dkt. No. 1). The initial insurance policy includes general commercial liability ("GCL") and covers a period of March 31, 2012 to March 31, 2013 ("Northfield 2012/2013 policy"), Compl., Ex. A (Dkt. No. 1-1); *see also* Tucker Decl., Ex. A (Dkt. No. 24-1). This policy was renewed for a coverage period of March 31, 2013 to March 31, 2014 ("Northfield 2013/2014 policy"), Compl., Ex. B (Dkt. No. 1-2); *see also* Tucker Decl., Ex. B; and again from March 31, 2014 to March 31, 2015 ("Northfield 2014/2015 policy"), Compl., Ex. C (Dkt. No. 1-3); *see also* Tucker Decl., Ex. C. Aside from one critical difference described below, the Northfield Policies, naming as insured "Civic Center Hotel, LLC. DBA: Civic Center Hotel," are "materially identical in all relevant respects." Compl. ¶ 13. Under each of the policies, Local 38 Trust, owner of the property, is named as an additional insured, "but only with respect to liability for 'bodily injury,' 'property damage' or 'personal and advertising injury' caused, in whole or in part, by the acts and omissions of Civic Center Hotel… ." *Id.* ¶ 14.

The policies cover "Bodily Injury and Property Damage Liability" under Coverage A and "Personal and Advertising Injury Liability" under Coverage B, and provide that Northfield "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' [or 'personal and advertising injury'] to which this insurance applies." Compl. ¶ 15 (quoting policies); *see also* Pl.'s Mot. for Summ. J. at 2 ("Pl.'s MSJ")(Dkt. No. 23); Local 38's Mot. to Dismiss or Stay at 5 ("MTDS")(Dkt. No. 26). The "bodily injury" or "property damage" must be caused by an "occurrence," defined as "an accident, including

continuous or repeated exposure to substantially the same general harmful conditions." Compl. ¶ 15–16 (quoting policies). "Bodily injury" is defined as "bodily injury, sickness or disease sustained by a person… ." *Id*. ¶ 16.

Northfield alleges that the provision entitled "Supplementary Payments" expressly excludes attorneys' fees.

> **1.** [The insurer] will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:
> …
> **e.** All court costs taxed against the insured in the "suit." However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

Tucker Decl., Exs. A, B, C (Dkt. No. 24-1). It also contends that each of the Northfield Policies excludes coverage for "punitive or exemplary damages, fines, penalties or multiplied damages. Compl. ¶ 21; Tucker Decl. ¶¶ 2–4 ; Ex. A; Ex. B; Ex. C.

The 2014/2015 Northfield Policy differs from the prior policies in that it includes an additional exclusion for both Coverage A and Coverage B, entitled "Habitability of Premises." Defs.' Cross-Motion for Partial Summ. J. at 6 ("Defs.' MPSJ")(Dkt. No. 50).

> ***Exclusion – Habitability of Premises***
>
> *The following exclusion is added to Paragraph 2., Exclusions, of SECTION I – COVERAGES - COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY [and] COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY:*
>
> "Bodily injury" or "property damage" [or] "Personal and advertising injury":
>
> (1) Arising out of the:
>
> (a) Actual or alleged violation of any federal, state or local law, code, regulation, ordinance or rule relating to the habitability of any premises;
>
> (b) Breach of any lease, rental agreement, warranty or covenant to maintain a premises in a habitable condition; or
>
> (c) Wrongful eviction from, wrongful entry into or invasion of the right of private occupancy of a room, dwelling or premises, whether actual or constructive, due to failure to maintain a premises in a habitable condition;
>
> (2) Alleged in any claim or "suit" that also alleges any violation, breach or wrongful eviction, entry or invasion as set forth in

    Paragraphs (1)(a) – (c) above.

Compl. ¶ 24 (quoting 2014/2015 Policy); Tucker Decl. ¶ 4; Ex. C.

  **B.**  **The Underlying Actions**

  In the summer of 2014, fifty plaintiffs sued the Civic Center defendants in *Galindo, et al. v. Security Title Insurance Co., Civic Center Hotel, et al.*, and in 2015, an additional forty-two plaintiffs brought suit in *Covino, et al. v. Civic Center Hotel, et al*. Baker Decl. ¶¶ 4–6 (Dkt. No. 27); Baker Decl., Ex. B (*Galindo* Compl.)(Dkt. No. 27-2); Baker Decl., Ex. D (*Covino* Compl.)(Dkt. No. 27-4)(collectively, "the Underlying Actions"). Both actions were filed in Superior Court of California, County of San Francisco, and concern alleged non-habitable conditions at the Civic Center Hotel, located at 20 12th Street in San Francisco. Compl. ¶ 1; Pl.'s MSJ at 2.

  The *Galindo* plaintiffs allegedly had oral lease agreements with the Civic Center Defendants and claimed that the defendants ignored plaintiffs' requests to repair defective conditions, including mold contamination. Compl. ¶ 27. The *Galindo* defendants allegedly knew of the defective conditions through numerous notices of violations issued by the San Francisco Department of Building Inspection from August 26, 2009 through April 4, 2014. Compl. ¶ 27; Tucker Decl. ¶ 5; Ex. D. ¶¶ 75–76. They brought seven causes of action: (1) negligence, (2) breach of implied warranty of habitability, (3) breach of warranty of quiet enjoyment, (4) violation of rent ordinance, (5) intentional infliction of emotional distress, (6) violation of Civil Code 1942.4, and (7) injunctive relief. *Id*. ¶ 28. And they seek general and special damages, including "repayment of rent, punitive damages, attorneys' fees, costs, [and] prejudgment interest… ." *Id*. ¶ 29. The *Covino* plaintiffs allege the same causes of action, and add an additional cause of action for a violation of San Francisco Proposition M. *Id*. ¶ 30. The California Superior Court consolidated the *Galindo* and *Covino* actions on June 11, 2015. *Id*. ¶ 34.

  Because Northfield does not deny that some of the claims are covered under the policies, it is currently defending the Civic Center Defendants in the Underlying Actions. Pl.'s MSJ at 1. Further, it "has paid attorneys' fees and other defense costs and expenses of Local 38 in defending these two underlying lawsuits." MTDS at 6. But it insists that certain "categories" of damages are

4

1  not covered under the policies. *Id.*

## II. PROCEDURAL BACKGROUND

On October 19, 2016, Northfield brought this action for declaratory relief against the Civic Center defendants. *See* Compl. (Dkt. No. 1). Northfield seeks a declaration that its coverage under the Northfield Policies does not include claims seeking (1) attorneys' fees, Compl. ¶¶ 35–38; (2) restitution, *id.* ¶¶ 39–44; or (3) penalties, *id.* ¶¶ 45–48; nor those (4) requiring an intentional act or a knowing violation of law as a claim element, *id.* ¶¶ 49–52; and (5) falling outside the scope of coverage pursuant to applicable terms, conditions, exclusions, and limitations, *id.* ¶¶ 53–56. Lastly, it seeks (6) reimbursement for "attorneys' fees and other defense costs and expenses" for uncovered claims. *Id.* ¶¶ 57–59.

On December 14, 2016, Northfield moved for summary judgment that its policies provide no coverage for claims seeking attorneys' fees, restitution, or penalties. *See* Pl.'s MPSJ (Dkt. No. 23). It also sought partial summary judgment on its fifth claim for relief, that "the exclusion 'Habitability of Premises' in the 2014-2015 Northfield Policy precludes coverage for all claims in the *Galindo* and *Covino* actions in their entirety… ." *Id.* at 3. But it later "withdr[ew] the portion of its motion as pertains to the 'Habitability of Premises' exclusion pending discovery of the notice its insureds received… ." Pl.'s Notice of Withdrawal of the Fifth Claim at 1:28–2:1 (Dkt. No. 57). Then on January 18, 2017, defendants Civic Center Hotel and Bill Thakor moved for summary judgment as to that claim, on the grounds that plaintiff failed to provide adequate notice of the change in coverage. *See* Defs.' MPSJ (Dkt. No. 50).

Also on December 14, 2016, defendant Local 38 moved to dismiss or stay Northfield's action pending resolution of the Underlying Actions on the grounds that it should not be forced "to litigate potential coverage issues in Federal Court that may not ever need to be resolved." MTDS (Dkt. No. 26). Defendants Civic Center Hotel, LLC and Balwantsinh "Bill" Thakor joined Local 38's motion, Defs.' Notice of Joinder (Dkt. No. 29),[1] and submitted a request for judicial notice in

---

[1] Defendants state that "CCH and Thakor are not waiving any of their rights, and specifically reserve all rights and arguments to also seek a dismissal or stay of this action on the same or different grounds." Notice of Joinder at 1 n.1. But, any responsive pleading was due by December 14, 2016. *See* Dkt. No. 21.

support of joinder, Defs.' Request for Judicial Notice (Dkt. No. 30).[2]

## LEGAL STANDARD

### I. MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

A motion to dismiss filed pursuant to Rule 12(b)(1) is a challenge to the court's subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). "Federal courts are courts of limited jurisdiction," and it is "presumed that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. of Am.*, 511 U.S. 375, 377 (1994). The party invoking the jurisdiction of the federal court bears the burden of establishing that the court has the requisite subject matter jurisdiction to grant the relief requested. *Id.*

A challenge pursuant to Rule 12(b)(1) may be facial or factual. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). In a facial attack, the jurisdictional challenge is confined to the allegations pled in the complaint. *See Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). The challenger asserts that the allegations in the complaint are insufficient "on their face" to invoke federal jurisdiction. *See Safe Air Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). To resolve this challenge, the court assumes that the allegations in the complaint are true and draws all reasonable inference in favor of the party opposing dismissal. *See Wolfe*, 392 F.3d at 362.

"By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air*, 373 F.3d at 1039. To resolve this challenge, the court "need not presume the truthfulness of the plaintiff's allegations." *Id.* (citation omitted). Instead, the court "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Id.* (citations omitted). Once the moving party has made a factual challenge by offering affidavits or other evidence to dispute the allegations in the complaint, the party opposing the motion must "present affidavits or

---

[2] Defendants request judicial notice of two orders on their motions for summary adjudication in the underlying state court actions. Dkt. No. 30. While Plaintiff does not object to defendants' request, I find the orders unnecessary to a disposition on the motion to dismiss and DENY the request.

any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction." *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989); *see also Savage v. Glendale Union High Sch. Dist. No. 205*, 343 F.3d 1036, 1040 n.2 (9th Cir. 2003).

## II. MOTION TO DISMISS OR STAY A DECLARATORY RELIEF ACTION BROUGHT UNDER THE DECLARATORY JUDGMENT ACT, 28 U.S.C. 2201

The Declaratory Judgment Act states that "[i]n a case of actual controversy within its jurisdiction…any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The district court must first determine whether there is an actual case or controversy within its jurisdiction. *Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 669 (9th Cir. 2005). The court must then decide whether to exercise that jurisdiction. *Am. States Ins. Co. v. Kearns*, 15 F.3d 142, 143–44 (9th Cir. 1994). "The statute gives discretion to courts in deciding whether to entertain declaratory judgments; it states that the court '*may* declare the rights ... of any interested party.'" *Id*. (quoting 28 U.S.C. § 2201(a))(alteration in original).

## DISCUSSION

Defendants argue that Northfield's action should be dismissed or stayed because: (1) declaratory relief jurisdiction is discretionary; (2) there are overlapping factual issues between the action and the underlying state court actions; and (3) substantial prejudice to defendants would result if the action is permitted to proceed. MTDS at 3. In their Reply, they insist that "the Ninth Circuit does not permit piecemeal declaratory relief actions concerning insurance coverage," and "Northfield's claims are not ripe." Reply at 3–5 (capitalizations omitted).

## I. DECLARATORY JUDGMENT AND ARTICLE III CASE-OR-CONTROVERSY

Before I reach the arguments enumerated in Local 38's motion, I must address its concerns that Northfield's claims are not ripe for review. Ripeness encompasses both Article III jurisdictional prerequisites and other prudential considerations. *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 58 n.18 (1993). Local 38's arguments concern the former—the "irreducible constitutional minimum of standing." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992);

*see* MTDS at 10 ("Local 38's responsibility to reimburse Northfield for attorneys' fees expended on uncovered claims is premature and therefore speculative."); *id*. at 9–10 ("Northfield's request for a declaratory judgment regarding the scope of its indemnity obligation is not ripe."); Local 38's Reply at 3 ("In the absence of an adjudication in the Underlying Actions, no present and actual controversy exists between the parties to this lawsuit.")(Dkt. No. 55); Local 38's Opp'n to Pl.'s MPSJ at 8 ("Northfield's lawsuit presents no case or controversy."); *id*. ("[T]here is no reasonable likelihood any of the future contingencies triggering the coverage in dispute will occur any time soon.").

The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction ... any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The Supreme Court has explained, "[b]asically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941).

Local 38 argues that any declaration would be speculative because the "scope of its indemnity obligation … 'rests upon contingent future events that may not occur.'" Reply at 3 (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)). Specifically, it insists that Northfield's claims depend on: (1) the outcome of the *Galindo* Action against its insured; (2) the outcome of the *Covino* Action against its insureds; and (3) the possibility that both Actions may be settled without triggering any of these insurance policy exclusions."[3] Opp'n to MPSJ at 8–9. But the Ninth Circuit has "consistently held that a dispute between an insurer and its insureds over the

---

[3] Defendants also insist that Northfield's action is unripe because it "provides no evidence that Local 38 has ever made a claim asking Northfield to pay for attorneys' fees, punitive damages, or any of the other categories of recovery set forth in Northfield's Complaint." Local 38's Opp'n to Pl.'s MPSJ at 10. Northfield takes great issue with Local 38's "semantic games," Reply ISO MPSJ at 5 n.3, and rightfully so. In its motion to dismiss, Local 38 admitted that "Northfield has paid attorneys' fees and other defense costs and expenses of Local 38 in defending these two Underlying Lawsuits," MTD at 6, so this line of argument is baseless.

8

duties imposed by an insurance contract satisfies Article III's case and controversy requirement." *Government Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1222, n. 2 (9th Cir. 1998). Defendants urge me to distinguish *Dizol* and "all of the other cases Northfield cites" because in those cases "the insurance carrier completely denied its duty to defend and completely denied any indemnity obligation[,]" and therefore, they involved "a real case or controversy." Local 38's Opp'n to Pl.'s MPSJ at 9. While I agree that this case is different because Northfield does not deny its duty to defend and indemnify at least some of the claims in the Underlying Actions, I disagree with defendants' conclusion finding that difference adequate to negate the "case or controversy" requirement. The parties dispute the scope of coverage obligations imposed by the Northfield policies; their adverse legal positions are sufficient to satisfy the constitutional jurisdictional prerequisite.

Moreover, "an insurer's declaratory judgment action regarding its duty to defend and indemnify [is] sufficiently ripe, even when the underlying liability action in state court ha[s] not yet proceeded to judgment." *Am. States Ins. Co. v. Kearns*, 15 F.3d 142, 144 (9th Cir. 1994). While Local 38 insists that it "should be permitted to conclude the *Galindo* and *Covino* State Court Lawsuits without the distraction of Northfield's premature declaratory relief action," that is not the standard that guides the determination. Local 38 again attempts to distinguish *Kearns* on the same grounds as *Dizol*—the insurance company completely denied any duty to indemnify or defend. *See* Local 38's Opp'n at 9 (citing *Kearns*, 15 F.3d at 143). But that has nothing to do with the court's ability to exercise jurisdiction.[4]

Local 38 offers no plausible reason for distinguishing between an insurer who refuses to indemnify all the claims and one that disputes its obligations only with regard to some. While Local 38 suggests that Northfield should have to identify "which specific claims Northfield seeks to exclude from coverage," Reply at 10, Northfield counters that "the only 'facts' that matter to Northfield's motion[] [are] [t]he relief sought by underlying plaintiffs[5] and the plain language of

---

[4] It is relevant to whether I should exercise discretion to hear the case, however. *See infra* section II.

[5] "Underlying plaintiffs claim multiple damages, asserting that the Rent Ordinance provides that 'the tenant may sue for not less than three times the actual damages' as well as attorneys' fees, and

9

the Northfield Policies." Pl.'s Reply ISO MPSJ at 4 (Dkt. No. 58). I agree. Accordingly, I will proceed to a discussion of whether I should exercise discretion to hear the case. *See Dizol*, 133 F.3d at 1223 ("If the suit passes constitutional and statutory muster, the district court must also be satisfied that entertaining the action is appropriate."); *id*. at 1225 ("the district court must make a sufficient record of its reasoning to enable appropriate appellate review").

## II. DISCRETIONARY EXERCISE OF JURISDICTION OVER DECLARATORY RELIEF ACTION

Local 38 contends that I should exercise discretion to decline jurisdiction here because the action: "(i) will entail the needless determination of potential state law issues, (ii) is an obvious attempt by Northfield to forum shop, and (iii) will force Local 38 to engage in needless duplicative litigation." MTDS at 8. While a district court's exercise of jurisdiction over declaratory relief actions is discretionary, there is "no *per se* rule against the district court exercising its jurisdiction to resolve an insurance coverage dispute when the underlying liability suit is pending in state court." *Kearns*, 15 F.3d at 145. Notably, these types of suits (coverage and liability) do not involve the same issues and the same parties. Further, "there is no presumption in favor of abstention in declaratory actions generally, nor in insurance coverage cases specifically." *Dizol*, 133 F.3d at 1225.

A court determining whether to exercise its discretion to hear the case should first consider the non-exclusive factors set out in *Brillhart v. Excess Ins. Co.,* 316 U.S. 491 (1942) and its progeny. *Id*. ("The *Brillhart* factors remain the philosophic touchstone for the district court.") The *Brillhart* factors include: "(1) avoiding needless determination of state law issues; (2) discouraging litigants from filing declaratory actions as a means of forum shopping; and (3) avoiding duplicative litigation." *Id*. "If there are parallel state proceedings involving the same issues and parties pending at the time the federal declaratory action is filed, there is a presumption that the entire suit should be heard in state court[,]" but "[t]he pendency of a state court action does not, of itself, require a district court to refuse federal declaratory relief." *Id*. (citation

---

that they are entitled to both punitive damages and to the trebling of damages.'" Pl.'s Reply ISO MPSJ at 4 (quoting underlying complaints). Each complaint also seeks punitive damages and attorneys' fees. *Id*.

10

omitted).

As in *State Farm Mutual Automobile Inurance Company v. Marentes*, "[t]he issues presented in the instant case center solely on disputes over California insurance law." No. 15-cv-02289-LHK, 2015 WL 6955012, at *4 (N.D. Cal. Nov. 10, 2015). Thus, "the federal interest in this matter is at its nadir." *Maryland Cas. Co. v. Witherspoon*, 993 F. Supp. 2d at 1178, 1183 (C.D. Cal. 2014). Northfield has not identified a reason why these issues should be adjudicated in federal court. *See, e.g.*, *Marentes*, 2015 WL 6955012, at *4 ("State Farm has failed to demonstrate why these legal issues should be resolved in a federal forum."); *Witherspoon*, 993 F. Supp. 2d at 1183 ("A 'needless determination of state law' may involve … a lawsuit with no compelling federal interest (e.g., a diversity action)"). To be sure, federal courts are often called on to address state law insurance issues in declaratory relief actions but here, as evidenced by a cursory glance at the "rent as restitution" claim, this factor tips in favor of a stay.

The second *Brillhart* factor "usually is understood to favor discouraging an insurer from forum shopping, i.e., filing a federal declaratory action to see if it might fare better in federal court at the same time the insurer is engaged in a state court action." *Am. Cas. Co. of Reading, Penn. v. Krieger*, 181 F.3d 1113, 1119 (9th Cir. 1999). This action is reactive because Northfield filed it in response to the plaintiffs' claims in the underlying lawsuit, and it "could have filed a declaratory relief action in state court … where such action could have been related to and coordinated with the pending state court actions." *Great Am. Assur. v. McCormick*, No. C 05-02175 CRB, 2005 WL 3095972, at *2 (N.D. Cal. Nov. 15, 2005); *see also* MTDS at 11. Northfield asserts that "a coverage action cannot be coordinated with an underlying action in California because the jury cannot consider insurance coverage when assessing the liability of an insured." Opp'n to MTD at 9. But "courts, including the Ninth Circuit, have dismissed similar arguments, finding instead that the insurer could simply have filed a state court action for declaratory relief and sought to relate the two matters." *Allstate Ins. Co. v. Tucknott Elec. Co.*, No. 14-CV-01804 SC, 2014 WL 5408324, at *3 (N.D. Cal. Oct. 23, 2014)(collecting cases). That said, it is a common practice for insurers to seek declaratory relief in federal court while underlying cases are proceeding in state court, and I am not convinced that Northfield is

11

necessarily forum shopping here.

The third factor concerning duplicative litigation does not apply directly, since the coverage issues here are different than the liability issues in the state court action. Northfield is not a party in state court.

The essence of the *Brillhart* factors is to impel the court to consider "the concerns of judicial administration, comity and fairness to the litigants." *Robinson*, 394 F.3d at 672 (internal quotation marks and citation omitted). The Ninth Circuit has noted other relevant considerations, including:

> whether the declaratory action will settle all aspects of the controversy; whether the declaratory action will serve a useful purpose in clarifying the legal relations at issue; whether the declaratory action is being sought merely for the purposes of procedural fencing or to obtain a "res judicata" advantage; or whether the use of a declaratory action will result in entanglement between the federal and state court systems. In addition, the district court might also consider the convenience of the parties, and the availability and relative convenience of other remedies.

*Dizol*, 133 F.3d at 1225, n. 5 (internal quotation marks and citation omitted). Consideration of these considerations establishes that I should grant a stay.

Fundamentally, through this action Northfield seeks to "pick off" certain issues—whether attorneys' fees, multiple damages, and rent paid as restitution are not covered by the policies—while continuing to provide a defense in the Underlying Actions. As Local 38 points out, "none of the cases Northfield relies upon sought piecemeal declaratory relief[, and n]one allowed an insurance company to exclude from coverage some claims but not others." Reply at 2. Moreover, defendants note that it is hypothetical whether they will be found liable for any of the damages claims Northfield wants to adjudicate coverage on now, and the facts proven in the case below may impact whether coverage is appropriate for some of the underlying claims. Since Northfield is providing a defense, it suffers no harm from waiting until the state court action is resolved. But requiring defendants to litigate these matters now while defending the state court action is an expensive and unnecessary burden.

During the hearing, Northfield justified this action by arguing that it would be helpful in an upcoming state court settlement conference to have a ruling on the three damages claims identified

in its motion for summary judgment. *See* Opp'n to MTDS at 1 ("A judicial declaration that no coverage exists for those particular claims therein that seek attorneys' fees, multiple damages, or restitution, or for claims under the 2014-2015 Northfield policy, will assist the parties in resolving the underlying actions by delineating Northfield's coverage obligations."). It relied on one case, *Eureka Federal Savings & Loan Association v. American Casualty Company of Reading, Pennsylvania*, 873 F.2d 229 (9th Cir. 1989), to support its position that such an action is appropriate for resolution under the Declaratory Relief Act and does not amount to piecemeal litigation. *Eureka* is easily distinguishable.

In *Eureka*, the Ninth Circuit affirmed the district court's decision to exercise jurisdiction over the insured's declaratory judgment action against the insurer concerning limits of liability coverage, since settlement depended on a determination of those limits. 873 F.2d at 231–32. But a determination of the *amount* of coverage available presents a different case than Northfield's, which seeks to focus on categories of non-case dispositive damages. Settlement of the underlying state court action does not rest on the determination of the coverage issues. Adjudication of them may give Northfield some leverage in the discussions, but providing settlement leverage for a party is not a very good reason to exercise jurisdiction. I am unaware of any case, and Northfield cited none, where a federal court exercised discretion to grant declaratory relief in a coverage dispute to resolve a narrow set of issues that would not resolve the insurer's obligations in the underlying action (as opposed to cases determining whether there is a duty to defend under the policy, for example).

In sum, after "balanc[ing the] concerns of judicial administration, comity, and fairness to the litigants" I will stay this action. *Chamberlain v. Allstate Ins. Co.*, 931 F.2d 1361, 1367 (9th Cir. 1991). *See also Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995)("If a district court, in the sound exercise of its judgment, determines after a complaint is filed that a declaratory judgment will serve no useful purpose, it cannot be incumbent upon that court to proceed to the merits before staying or dismissing the action.").

## CONCLUSION

In accordance with the foregoing, this action is STAYED pending resolution of the

1 Underlying Actions. Northfield may seek to lift the stay at the conclusion of the Superior Court
2 proceedings or at such other time as it (or any other party) believes that circumstances have
3 changed sufficiently to warrant adjudication of the claims. The parties shall file a Joint Status
4 Report six months from the date below, and every six months thereafter, briefly alerting the Court
5 to any developments in the Underlying Actions.

6 Having decided not to stay this case based on the motion to dismiss or stay, I will not
7 address the merits of the pending summary judgment motions.

8 **IT IS SO ORDERED.**

9 Dated: March 8, 2017

William H. Orrick
United States District Judge